UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LeROY N. STRICKLAND,

                            Plaintiff,

                                                            <u>DECISION AND ORDER</u>

                                                            00-CV-6595L

            v.

COUNTY OF MONROE, OFFICE OF PROBATION
AND COMMUNITY CORRECTIONS and CITY OF
ROCHESTER POLICE DEPARTMENT,

                            Defendants.
_____

## INTRODUCTION

        Plaintiff, LeRoy N. Strickland ("Strickland" or "plaintiff"), an African-American male, over

40 years of age, commenced this action claiming employment discrimination on account of race, age

and gender.  Plaintiff also claims that he was retaliated against for complaining about discrimination.

        Plaintiff's *pro se* complaint[1] is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, *et seq*.  The gist of plaintiff's complaint is that he was denied employment as a probation

officer with the Monroe County Probation Department ("the County" or "defendant") from 1996

through 1999.  Plaintiff filed a charge of discrimination with the New York State Division of Human

Rights ("NYSDHR") and the Equal Opportunity Employment Commission ("EEOC") alleging

_____

        [1]  Although plaintiff is proceeding in this action *pro se*, the court notes that he is a
licensed attorney, admitted to practice in the State of Pennsylvania. (Dkt. #73, Ex. D).

retaliation, but the NYSDHR dismissed those charges finding no probable cause to believe that the

County retaliated against him for filing a discrimination charge. The EEOC adopted the findings of

the NYSDHR and issued plaintiff a right to sue letter. (Dkt. #1, Exs.1-3).[2]

Plaintiff claims that he was on a list of eligible candidates for the position of probation

officer, but was passed over and not hired, although there were numerous vacancies in the

department during the relevant time period.  Plaintiff claims that such unfavorable action was

motivated by his race, gender, and age, as well as in retaliation for having filed a claim of

discrimination against his previous employer, the City of Rochester.

The County moves for summary judgment.[3] (Dkt. #65). Plaintiff opposes summary judgment,

and argues, based on affidavits and exhibits, that there are issues of fact regarding the County's

decision not to hire him that should be decided by a jury. (Dkts. ##71-75). I disagree and grant

defendant's motion.

---

[2]  In his NYSDHR charge, plaintiff complained only of retaliation by the County.  He
made no allegation that the County refused to hire him based on his race, gender, or age.
Moreover, the administrative records submitted by the parties from the NYSDHR indicate that it
only investigated whether retaliation played a role in the County's decision not to hire him. (Dkt.
#73, Ex. G). It did not investigate whether plaintiff's race, gender, or age were an issue.
Nevertheless, the County did not assert plaintiff's failure to exhaust administrative remedies as
an affirmative defense in its answer, nor has it moved for summary judgment on this basis.
Insofar as the exhaustion requirement contained in the discrimination statutes is not jurisdictional
but rather a condition precedent to suit, *see Francis v. City of New York*, 235 F.3d 763, 768 (2d
Cir.2000), the Court does not address the issue here.

[3]  In a prior Decision and Order, the Court dismissed on summary judgment plaintiff's
claims against the City of Rochester Police Department. (Dkt. #25).

**FACTUAL BACKGROUND**

The following facts are undisputed. In 1995, plaintiff worked for the City of Rochester Police Department as a paralegal.  In August, he was told that his position at the RPD was being eliminated and that he was laid off.  On February 8, 1996, plaintiff filed a charge of discrimination with the NYSDHR against the City, alleging that he was terminated because of his race.[4]

While he was working at the City, plaintiff applied to the County for the position of probation officer and, on June 1, 1995, he took the civil service examination. On November 3, 1995, based on the results of that examination, the County established an eligible list of 81 passing candidates for the probation officer position. Originally, plaintiff was ranked 41st. On March 7, 1996, the County revised the eligible list, and plaintiff moved up in rank to 28th.

In addition to passing the civil service examination, probation officer candidates also had to meet other qualifications, which are set forth in New York Executive Law § 257(1).  That provision states that: "[n]o person shall be eligible for appointment as a probation officer who is not physically, mentally and morally fitted. Probation officers shall be selected because of definite qualifications as to character, ability and training, and primarily with respect to their capacity for rightly influencing human behavior."

All candidates, including plaintiff, were asked to complete a Department of Human Resources Employment Application and a Candidate Questionnaire which asked about, *inter alia*, a candidate's employment, mental health, and criminal histories. In addition, a thorough background

---

[4]  The NYSDHR's administrative determination of the charge is not contained in the record. Its significance for purposes of this case pertains only to his retaliation claim against the County, however, and lies in the fact that he *filed* the charge in the first instance.

investigation was conducted for each new candidate. Past employers were contacted, neighbors interviewed, references checked, criminal histories were run, and a written background investigation report was prepared detailing the background investigation.[5]

Pursuant to the rules set forth in New York's Civil Service Law § 61(1), plaintiff first became eligible for the position of probation officer in March 1996. He completed a Monroe County Employment Application and was given a first interview. (Def. Ex. H). He then completed a Candidate Questionnaire before his second interview. (Def. Ex. I). Robert J. Burns, the Probation Administrator and the person who ultimately made the decision not to hire plaintiff, conducted plaintiff's second interview. (Burns Aff. ¶¶15, 26). Burns then requested that Probation Supervisor Lewis Barone conduct plaintiff's background investigation, which was completed in June 1996.

Between March 1996 and April 1999,[6] 35 candidates (including plaintiff) competed for probation officer positions. During this period, the County hired 33 of the 35 eligible candidates. Only plaintiff and one other candidate were not hired. (Burns Aff. ¶44).  Each time plaintiff was passed over for the position, Burns made the determination that plaintiff had more negative elements in his background investigation and that the candidate hired was more fit for the position. (Burns Aff. ¶34). Plaintiff's background investigation report indicated that plaintiff had pleaded guilty to assault and battery in Florida in 1970 and received a term of probation of 2 1/2 years.  The report also stated that plaintiff had left three different jobs under acrimonious or troubling circumstances

[5] Four candidates did not undergo background investigations because they already were employed by the probation department in another capacity. (Burns Aff. ¶48).

[6] On April 26, 1999, a new eligible list of candidates was established after a subsequent administration of the civil service examination.

in which his veracity had been called into question. According to the report, one job with the Florida Department of Health and Rehabilitative Services, which had duties quite similar to those of probation officer, ended when plaintiff was asked to resign because his work was unsatisfactory. (Def. Ex. J).

Of the 35 candidates who were in direct competition for the probation officer positions, 20% (7) of those appointed were African-American, 43% (15) were male, and 46% (16) were 40 years of age or older. (Def. Ex. G).

## DISCUSSION

### I.  Summary Judgment in Discrimination Cases

When deciding a motion for summary judgment brought pursuant to FED. R. CIV. P. 56, a court's responsibility is to determine whether there are issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001)(quoting *Anderson*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The general principles regarding summary judgment apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating "that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'"). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

After reviewing the evidence submitted on the motion, I believe that defendant is entitled to summary judgment. The reason is simple: plaintiff has failed to demonstrate material issues of fact warranting a trial regarding the County's proffered reasons for not hiring him.

The Court analyzes discrimination claims in accordance with the familiar *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Reeves*, 530 U.S. at 148. First, plaintiff must establish a *prima facie* case of discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory business rationale for its actions. "If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment…the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Feingold v. New York*, 366 F.3d

138, 152 (2d Cir.2004)(quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)).

## II.  The County's Legitimate, Nondiscriminatory Reasons

For the purposes of the motion, I will assume that plaintiff has made out a *prima facie* case under Title VII[7] concerning his race and gender discrimination and retaliation claims.[8]  Next, I find that the County has advanced at least three legitimate, nondiscriminatory reasons for not hiring plaintiff.  The hiring decisionmaker, Robert Burns, sets forth in an affidavit the bases for the County's decision regarding plaintiff.  First, the background investigation revealed that plaintiff had been convicted of assault and battery in Sumter County, Florida in 1970. Second, plaintiff failed to disclose his 1970 conviction in his Candidate Questionnaire.  Third, the background investigation disclosed that plaintiff's work performance in Florida had not been satisfactory and he had been

---

[7]  To state a *prima facie* case of discrimination under Title VII based on race or gender, plaintiff must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Feingold*, 366 F.3d at 152.  To establish a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) that he participated in an activity protected by Title VII; (2) that his employer was aware of that activity; (3) that plaintiff suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir.2000).

[8]  Any alleged age discrimination claim must be dismissed since plaintiff has proceeded here only under Title VII and age claims must be prosecuted, if at all, under the Age Discrimination in Employment Act. 29 U.S.C. § 621, *et seq.* Although plaintiff makes a single, passing reference to "age" in his complaint, he did not assert an ADEA claim or cite the statute as a basis for relief. Even if plaintiff's complaint could be construed as raising an ADEA claim, I find that the claim would fail for the same reasons discussed in the context of his race and gender discrimination claims, *infra*, that is, he failed to raise an issue of fact regarding the County's legitimate reasons for not hiring him.

asked to resign.  The position involved was apparently similar to that of a probation officer. (Dkt. #65, Burns, ¶¶17-36).

Burns explains that each time plaintiff was in competition for the position under New York's Civil Service rules, he determined that another candidate had fewer negative elements in his or her background and chose to hire him or her instead.  Burns denies that the reason he did not hire plaintiff was because of his age, gender, race, or pending NYSDHR complaint against the City. (Dkt. #65, Burns, ¶¶17-36).

### III.  Plaintiff Failed to Show Pretext or Submit Evidence of Discriminatory Animus

Plaintiff has failed to demonstrate that the reasons advanced by the County for its decision not to hire him were false or a pretext for discrimination. The adverse information relied on by the County, that is, a prior criminal record and the failure to fully disclose such information, is ample justification for refusing to hire a probation officer.  Also, an unfavorable job performance in another position also justifies the failure to hire.  Plaintiff may disagree that those reasons should have been utilized, but they are legitimate and justifiable.

Plaintiff disputes the veracity and reliability of the information contained in his background investigation report. He claims that the County conducted a "biased, faulty and inaccurate background investigation." (Dkt. #72, ¶6). Essentially, he takes issue with several of the factual conclusions made in the report, and contends that he has no criminal conviction record, that the reports regarding his poor work history from his prior employers were false or came from unreliable sources, and that his alleged "questionable veracity" is "nothing more than a defamatory or at least

a weak pretext by [the] County to camouflage its discriminatory reason for not hiring him." (Dkt. #71, p.3).

In support of his contention that he was not convicted of assault and battery, plaintiff relies on the Termination of Probation report[9] from the 1970 arrest that states, in seemingly contradictory language, that plaintiff "entered a plea of guilty to the offense of assault and battery . . . and that said Court suspended imposition of sentence, *withheld adjudication of guilt*, and placed [plaintiff] on probation for a term of 2 years 6 months in accordance with Section 20, Chapter 20519, Laws of Florida, 1941." (Dkt. #73, Ex. E, emphasis added). A current Florida statute, FLA. STAT. ANN. §948.01(2), appears to be the successor statute to Section 20, Chapter 20519 of the Laws of 1941. It states that, when a Court determines that a defendant may not commit the crime charged in the future, it may "withhold the adjudication of guilt … and … stay and withhold the imposition of sentence upon such defendant and shall place the defendant upon probation."

This statute and the evidence plaintiff filed[10] does support plaintiff's contention that a formal judgment of guilt was never entered in the case. Nevertheless, it does not raise an issue of fact regarding whether the County's real motivation for not hiring plaintiff was discrimination. Barone relied on the records from the State of Florida stating that plaintiff pleaded guilty, and this reliance

---

[9]  This is the same report that Barone obtained and relied on during his investigation into plaintiff's criminal history.

[10]  Plaintiff also submitted an affidavit he wrote in 1974 setting forth in detail the unusual circumstances surrounding his 1970 arrest, his refusal to plead guilty to the charges, and the adjudication of probation that allowed him to return to college the following semester. Plaintiff proclaimed his innocence then too, and maintained that he never pleaded guilty and was not convicted.  (Dkt. #73, Ex. F). In addition, he filed the affidavit of his foster sister, Bertha Mae Williams, who attended all court hearings and proceedings in Florida in 1970, and attests to the fact that plaintiff never pleaded guilty. (Dkt. #74).

was not unreasonable. Nor was it unreasonable for Burns to rely on the information contained in Barone's investigation report when he made the decision not to hire plaintiff.

The same can be said for issues plaintiff attempts to raise regarding the accuracy of the statements made by the witnesses Barone interviewed during his investigation, particularly the statements from plaintiff's former employers. Burns explained that he had concerns regarding reported circumstances from other employers that called into question plaintiff's veracity. (Burns Aff. ¶29). That plaintiff denies that he left certain jobs under the circumstances as described by the witnesses is of no consequence. Barone reported what witnesses told him, and Burns relied on those statements in making his hiring determination. It is not the Court's role to decide whether the County made a bad employment decision. *Richane v. Fairport Cent. Sch. Dist.*, 179 F.Supp.2d 81, 89 (W.D.N.Y.2001)(federal discrimination statutes "prohibit[] discrimination, not poor judgment"); *see also Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir.1989)(federal courts do not have a "roving commission to review business judgments")(quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir.1987)); *Dister*, 859 F.2d at 1116 ("[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons"); *Meiri*, 759 F.2d at 995 (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process"); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1992)("[c]ourts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' non-discriminatory business decisions").

Rather, the issue is whether the County based its decision not to hire plaintiff on illegal, discriminatory reasons. Plaintiff has pointed to nothing in the record to suggest that there were discriminatory reasons based on his race and gender for not hiring him. In light of the statistical evidence that other African-Americans and other males were hired for the position,[11] what is left is only plaintiff's conjecture and surmise that he failed to get the desired probation job for some discriminatory reason. More than speculation and surmise, though, is required to defeat a summary judgment motion. *Sasannejad v. Univ. of Rochester*, 329 F.Supp.2d 385, 393 (W.D.N.Y. 2004); *see also Meiri*, 759 F.2d at 998 ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."); *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995)(a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment")(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

Finally, I find that plaintiff has not raised an issue of fact regarding his retaliation claim. The fact that the County knew that plaintiff filed a discrimination charge with the NYSDHR against the City is sufficient to state a *prima facie* case.  However, by itself, it is not enough to raise a question of fact regarding the legitimate, nonretaliatory reasons the County has provided for not hiring plaintiff.  I am unconvinced that these reasons are merely a pretext for retaliation. The Court has

---

[11]   The County submitted statistical information concerning the race, age and gender of the applicants that were hired in place of plaintiff. According to the statistics submitted of the 33 candidates selected in place of plaintiff, 20% were African-American, 43% were male, and 46% were over the age of 40.  The statistical breakdown is consistent with the percentage of African-Americans and males in the Monroe County, New York area. These statistics demonstrate no pattern or practice of discrimination. (Def. Exs. G, Q).

reviewed the background investigation reports for the candidates who were hired. (Def. Ex. M). These reports do not contain negative assessments regarding past work performance or criminal histories similar to those raised in plaintiff's report. The only other candidate who had repeated complaints from prior employers regarding his performance, Candidate 75, was also not hired by the County, thus lending further support for the County's contention here.

There simply is insufficient evidence in this record upon which a reasonable jury could conclude that retaliation, or race, gender, or age discrimination was the real reason plaintiff was not hired. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000)(quoting *Reeves*, 530 U.S. at 143) (to survive summary judgment, the Court must examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'").  Plaintiff has not credibly called into question the County's nondiscriminatory explanation for its motives, and summary judgment, therefore, is warranted.

## CONCLUSION

The County's motion for summary judgment (Dkt. #65) is granted, and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        June 28, 2005.

- 12 -